Okay, you may proceed, Mr. Hockman. Thank you, Your Honors. Rob Hockman on behalf of Orlando Hall. I'm going to address Davis and retroactivity first, and then I'll turn to kidnapping and the force clause of 924C toward the end of my remarks. Davis has been made retroactively collateral, retroactively effective on collateral review by the Supreme Court. This is not a matter of predicting what the Supreme Court will say about the retroactivity of Davis. It is a matter of applying the strict logic of what the Supreme Court's own decisions have already said. I'm talking specifically about the necessary, what Welch and Davis combined necessarily dictate. Start with Welch. You acknowledge then that it has to be a past holding. It cannot be a prediction. That's correct, and in fact, as we'll see later when I discuss some of the amicus's arguments, amicus actually runs afoul of the prediction, the rule against no prediction. It does require Welch and Davis are past decisions, and the combined effect of them is that Davis has been made retroactive. Would it be fair to say then that what the standard is essentially is that a lower court would have to be insubordinate? I think it is. It would amount to the view that a lower court would be failing to follow the necessary dictates of the Supreme Court, whether you call that insubordinate. That's a matter of characterization. Maybe I'm being pejorative, but right. The lower court would be essentially violating its duty to follow binding Supreme Court precedent. If the lower court were guilty of that, then we should authorize the successive petition. I think that's right, Judge Ho, and in fact, we are fully of the view that this court is bound by what Welch and Davis have said. What do you make of our opinion in Piscata? I think it's Piscata. Was Judge Benavides insubordinate in Piscata? Well, I think that it was a mistaken application of what the law requires, and that's what every other court of appeals that has considered this in a published opinion has said, the first, the third. In those other courts of appeals, I'm sorry to interrupt you again, but in those other courts of appeals, in how many of those cases was the issue that we're talking about here actually disputed? Well, I don't know off the top of my head how many of them. The government here has taken the view that we're correct. I'm not sure it matters, because after all, the court is obliged on its own to determine what the dictates. I agree that it doesn't really matter in a rigorous sense, but you're the one who brought up these other circuits. If the issue actually wasn't even disputed, it strikes me that this may be the first case where any court has actually the chance to address the issue with adversarial briefing on both sides. Well, it might be true that this is the first opportunity to address it with adversarial briefing, but I think that that just moves to the rationale that was discussed, and I commend you to Hamoud, the 11th Circuit decision in Franklin, the 6th Circuit decision in Mullins, and the 10th Circuit. These are not sort of ipsy-dixit opinions. These are reasoned explanations, and the rationale holds up. Welch? You mentioned Franklin. In Franklin, as I understand the 6th Circuit, it is holding that lower courts, and I'm just quoting here, lower courts may determine on their own the retroactivity of new rules. How do you square that with the text of 2255H that it has to be the Supreme Court that's doing the work? Well, actually, I think you stopped before the on their own the retroactivity of new rules when, quote, and now quoting Tyler V. Cain, multiple cases necessarily dictate the retroactivity of the new rules. I think what that's saying is just what Tyler, it's just applying the standard of Tyler V. Cain. Tyler says there are two ways, two ways, not just one, two ways the Supreme Court can have made a new rule retroactive on that. That's clear. Nobody disputes that. Everybody understands that, but then it went on, and every justice of the Supreme Court in Tyler V. Cain agreed that when even in the absence of saying X case, in this case Davis, is retroactive. Okay, but let's look at how the 6th Circuit's understanding Tyler. You mentioned the part of the 6th Circuit opinion that quotes Tyler. Let me go back to the part that I quoted that is the 6th Circuit talking and not Tyler. Lower courts may determine on their own. Why does that not violate the language in that, in Tyler, the paragraph right before the language you're quoting? The whole point of that passage is that we should not be in the mode of predicting. I agree that you should not be in the mode of predicting, but what you should be in the mode of doing is following the necessary dictates of Supreme Court decisions. That is, and the Tyler makes clear, there's admittedly a subtle distinction, but reading the paragraph before that multiple holdings discussion that I know you want to focus on, understandably, but the immediate paragraph before makes clear the most that the person there could claim is that the court should make Cage retroactive. What is clear, however, is that we have not made Cage retroactive. That's, I think that what the, again, if this is, I agree, a subtle distinction, and I think there's, there are many ways that this can be sliced thin, and we're not asking this court to simply take sort of general principles and apply them in new, in new sort of unfamiliar context and say that, well, it seems like the basic idea that the Supreme Court has somehow is sufficient to lead one in, unless it's indisputable, unless it's actually indisputable, unless there's no reasoned basis for distinction, unless there's no reasoned basis for disputing the new, the new application, then I think you. Is that the test that there, that it's indisputable that the court will do it? Well, the court has actually done it. It's actually done and necessarily dictates counts as actually done. In other words, when you have premise, and again, this is the amicus's characterization. We're talking about a syllogism, right? You can have premise one, premise two, and nobody has said the conclusion, but the conclusion has been reached, even though nobody has noticed it yet, even though nobody has declared it yet, even though nobody has said it out loud. That's the way logic works. But I get the syllogism. I think Amiki, it sounds like you and Amiki agree that a syllogism would work if you would, in fact, you just need to have the major and the minor premises and everything all fleshed out. I think we do. Here's the question then, where has the Supreme Court said that this rule of Davis is in fact substantive, and in turn, that all substantive rules are attractive? It seems to me that the court has neither said X equals Y, nor that Y equals Z. Well, here's what the court has said in Welch, and now I'm just quoting, right? Johnson struck down a part of a criminal statute, and in that case, the criminal statute, of course, was the Armed Career Criminal Act, that regulates conduct and prescribes punishment. It thereby altered the range of conduct of the class of persons that the law punishes. It follows that Johnson announced a substantive rule that has retro effect in case on collateral review. Now let's look at Davis, and what does Davis do? Davis does for 924C exactly what Johnson did for the Armed Career Criminal Act. It struck down a portion of 924C that, again, just right out of Welch, regulates conduct and prescribes punishment. It's the same thing, just as of Welch. It's the language of logic, altered the range of conduct of the class of persons that the law punished us. So it too follows, again, this is the language of Welch, it follows logically that Davis announced a substantive rule that has retroactive effect in cases on collateral review, and that is the rationale that's in all these other circuit cases, Hamoud, Mullins, Franklin, et cetera, that have been run. They're all following the logical syllogism. Welch explains that when a court declares a portion of a criminal statute void for vagueness, that new rule is retroactive on collateral review. That's the major premise, the minor premise. Just to be clear, though, I thought that what Welch was saying is that substantive rules are generally retroactive, not that they're categorically always retroactive. But it didn't only say that. The type that we might consider, we might seriously consider making retroactive. It didn't only say that. What Welch said is this specific kind of rule, the declaration that a portion of a criminal statute is void for vagueness, that that rule is substantive. And that's what intellectually leads in light of Davis to the conclusion that Davis is retroactive. Let me acknowledge, you make a very powerful point that may very well win in the Supreme Court in a future case. Having said that, there is some kind of curious language in the Davis dissent from Justice Kavanaugh suggesting that it may not be retroactive and even suggesting a potential basis for distinction. One can quibble with whether his distinction would in fact hold or not, but isn't there a step that the Supreme Court has not yet taken that Justice Kavanaugh and three of his colleagues make clear they have not taken yet? Respectfully, Your Honor, no. I mean, I just, I think the answer is no. I understand that that language exists in the opinion, but respectfully, there is no space. There is no space between how the statute in 924C that Davis said is unconstitutional and how the Armed Career Criminal Act provision that Johnson said is unconstitutional function. They are exactly the same. There is a difference. The previous cases are dealing with previous conduct, previous to the crime at issue. Whereas in these Davis type cases, in this case, it's about the very conduct in question. No, no. What I mean is that the declaration that these two provisions are unconstitutionally vague. I'm not talking about how the statutes themselves could have been interpreted. I understand your point that they're the same, but Justice Kavanaugh is at least drawing a distinction. Again, it may or may not ultimately be a meaningful distinction, a substantively dispositive distinction. But I think he is saying, along with three of his colleagues, that it would take another step. You'd have to extend Johnson, extend DiMaia, extend Welch from a previous conduct type case to a present conduct type case. Oh, I know nobody in the majority in Davis really quibbles or responds to this discussion. I mean, to be clear, I don't, I'm relying almost, I'm relying fundamentally on Welch and Davis and their combination. Any differences between the statutes in DiMaia and Johnson on the one hand and Davis on the other really goes to the question whether Davis is a new rule, which everybody concedes it is. What matters is nobody can point to a word in Welch, a word in Welch that leaves any space, and this is why I say necessarily dictates is satisfied, that leaves any space for the conclusion that Davis is not retroactive. And the giveaway, the giveaway, I think, is that Amicus comes out, out loud and says, well, the Supreme Court might abandon Welch. And that is kind of a giveaway that what needs to happen is there needs to be a change in the law, some future predicted change in the way Welch functions in order to reach the conclusion. And that's exactly what Tyler McCain and the language, the text of 2255H say you can't look at. You can't be predicting how the Supreme Court might shave or narrow or otherwise modify its preexisting rules. It's the rules today that matter and the rules today that control. And that's why that – once you understand that, once you embed yourself in Welch as it exists, not as it might be modified in the future by some future act of the Supreme Court, then you – there's no way around concluding, following the logic, the major premise in Welch that when a portion of a criminal statute is void for vagueness, that new rule is retroactive on flatter review. Davis, a portion of a criminal statute, they're void for vagueness. Therefore, it follows as a matter of logic. And this is just – this is just abiding Tyler McCain. And this is, by the way, I want to be clear, Judge Hogue, this is not moving into Justice O'Connor's concurrence. This is the opinion of the court and Tyler McCain recognizes. And if there is any case that falls into the necessarily dictates, it's got to be this one. It's got to be – otherwise, it's an all set. I'm sorry, counsel. Can we talk about necessarily dictates for a second? Sure. So I understand the first category when the Supreme Court makes cases retroactive, which seems to be the way this normally works, right? You have a Johnson, which is followed by a Welch. You have a Ramos, which is followed by Edwards versus Vinoy, right? The court grants the second case to answer the question not presented in the first case, retroactivity. So what – when we're thinking about the methodological question of how to cobble together multiple holdings to determine that something is necessarily dictated, what would be the best example of the court necessarily dictating retroactivity in that way? Well, quite honestly, this case, I think. Is there anything that comes before it? I think – well, I mean, this court decided Sparks and it determined that Granby, Florida was necessarily dictated by Teague. But as Judge Hogue mentioned, right, inferior courts. And so I guess my real question is when we're trying to figure out whether the Supreme Court has made it, it would be really helpful to have a Supreme Court case that explains how to do that. Well, I'm not sure. I guess what I'm puzzled is I'm not quite sure why they would have occasion to explain unless some dispute arose over the logical consequences of its own rulings. The Supreme Court wouldn't really have an occasion – and I'm not aware. I mean, I'll be honest with you, Judge Oldham. I'm not aware of a case where they've applied the necessarily dictates off the top of my head, the necessarily dictates standards themselves. It's actually a standard that was meant to be set forth for lower courts to follow the logic and reach the conclusions so that the Supreme Court doesn't have to do it every time, I think. And it's also, quite honestly, it's just faithful to the language of 2255H. If it's a logical consequence, it has been done, even if the Supreme Court hasn't said it yet. If we're trying to follow the language of what the Supreme Court has told us and try to faithfully apply it, what would be the sentence in Welch that says all of our void for vagueness holdings are new by us, the Supreme Court of the United States? You've pointed over and over to the language where they say Johnson is a new substantive rule made retroactive to cases on collateral review. But I don't see anything in there where they say, this is also the thing we were talking about in Tyler v. Cain, where to use the amicuses, you know, one, two, three, the time three holding, that this is not just about Johnson. This is about all void for vagueness challenges, will all heretofore be made retroactive to cases on collateral. Well, I mean, I don't think when it spoke about Johnson, that the Supreme Court was saying Johnson only and Johnson specifically, what it said. So for instance, earlier up above in the paragraph above the passage that I quoted earlier, it referred to Bowsley. And it says, you know, it says a decision that saves a vague statute by adopting a limited construction is substantive. Again, that's generic, a decision. So anyone who falls outside the limit of construction can use that decision to seek relief on collateral review. And then it goes to goes on to say, this, it would it would make it follows, it would make no sense to deny that a decision that can't save the vague statute is similarly available on collateral review as a new rule decided by the Supreme Court. Again, it's generic. It's it's a category of cases. It's not it's not just Johnson and Johnson only. It's the category of cases that declares a portion of a criminal statute unconstitutionally vague. And so I read those two paragraphs. And I'm going to try and give you the page real quickly. It's I believe it's 1268 of the Supreme Court Report of 136 at 1268. That's where the that's where it's laid out in what I think is categorical fact that applies here. And as I said, this is I think this is being faithful to Tyler. It's being faithful to Sparks, which again, the amicus asked this court to essentially abandon Sparks. But really the problem I want to just emphasize, you know, it's not only inappropriate, I think, for this panel, especially in this posture to abandon Sparks, but it's beside the point because it's really Tyler and the mechanisms of Tyler that I think matters here. Let me turn briefly, just very briefly to kidnapping. And I just want to emphasize and obviously it's not it's not quite agreed, but I think it's fairly close to agreed. This court asked us to brief the question of whether kidnapping satisfies the fourth clause, but also whether that question should be left to the district court. Bradshaw will obviously address the government's position on this, but I read his brief as coming very close to saying it would be certainly conceding it would be entirely appropriate for this court to leave that to the district court. I think it would be under the circumstances of this case. They are making an admittedly novel argument about the about the death results element. I think it's actually a fairly weak argument. I think we have the better of it on the merits, but we don't even have to reach that. And this court shouldn't reach that. We only need to make a slight showing of success on this issue, assuming we prevail on the other issue as well to to be entitled to the certificate so that we can proceed in the district court and hash this out in full. If there are any further questions on that, I'm happy to address why I think it's quite clear that death results is not does not have as an element to use attempted use or or threatened use of physical force. But if there are no further questions on that, I just reserve me go back. Let me let me go back just for a moment to the retroactivity issue. So I certainly get your point that reading, reading Welch, I mean, I've read Welch now, the length, much of the reasoning would seem to map on readily. And so at a minimum, that seems like an argument, a good argument, perhaps, that the Supreme Court should, as Tyler makes clear, should extend, but that that's not necessarily good enough under 25 age. But let me ask you this, what do you make then of Justice Kavanaugh's question on behalf of four justices? Who knows whether Davis will be retroactive? What's he doing there? To be honest, I don't know whether he sat down with Welch and looked at it. I mean, that's that's got to be my I mean, I got to be honest with you. I don't actually I can't I can't attribute to that anything other than he did not sit down with Welch and reason through the question. Raising questions in a dissent is hardly a novel practice. Well, let me let me pose at least a hypothetical mindset that the justice may have had. He sees Welch, he sees all this reasoning. But he also notes that Johnson and Amaya are about past conduct. Whereas Davis is about the conduct for which the pending charge is all about. This may or may not turn out to be the most powerful way to distinguish Welch. But he is acknowledging that there is analysis that needs to be done. It's not as if it's just merely a different statute. It's a statute of a different kind. That may or may not be a distinction with a difference, but it is a distinction. So I would not call that a distinction. Your Honor, I would call that Well, I think, well, first of all, what the freedom that Supreme Court justices have to to work with Supreme Court opinions is I think it's fundamentally different from what courts of appeals judges have. Moreover, from what Tyler instructs courts of appeals judges to do. And I think this is the critical distinction, right? If Justice Kavanaugh sees a distinction between the statutes at issue and Johnson and Amaya on the one hand and the statute in issue that's fine. But he didn't in his speculation point to any language in Welch itself that even suggests or allows for that distinction. The fact that he might later decide to adopt a new approach to retroactivity, a new forward looking future oriented approach to retroactivity that's different from the one that's currently prevailing in Welch based on the language of Welch. That's not a reason to deny this application. That's a different, that would be that would be itself a change in the law. That's not what has happened today. And that's the obligation of this court right now is to apply Welch as it exists, not Welch, not some future case that Justice Kavanaugh is able to persuade other justices in the Supreme Court should be, the rules should be modified. The Welch rules should be modified into some different approach to retroactivity. Counsel, before we, I'm sorry, go ahead. I was going to ask you about the 924C question with respect, I'm sorry, not the 924C question, but the kidnapping question resulting in death. And if we did decide that we needed to reach that in order to issue a 2244 authorization, I'm looking at page 21 of the, I think this is the supplemental brief that you filed in June. After the amicus filed and you have this hypothetical about the man luring the child victim, et cetera. But we have cases going back over a decade that say this question about applying the categorical approach does not turn on interesting hypotheticals that you need actual examples of the statute being administered in a way to prosecute crimes that would fall outside of the elements clause. So I'm not sure I understand really what else you have beyond interesting hypothetical questions. Yeah, well, two responses to that. First of all, I don't think we need in this case, those cases requiring us to produce a case are cases for in situations where there's a generic federal statute that's being compared to a state statute and try to map that on. And that I understand, this is different. This is the federal, the Armed Career Criminal Act, which specifically says as a matter of statutory language that the statute that the statute is relying on must have as an element. So I think all you do under these circumstances is look at the elements. Certainly no case excludes that. And again, the low threshold for issuing a 2255H application for allowing us to go, we should be able to litigate that question itself before the district court. So that's my first answer. Procedurally, I think it's inappropriate for this court now to apply that rule in a new context. And also, this has only been the subject of letter briefing. We'd have the opportunity, we should have the opportunity to, if we need to produce a case, which I don't think we should, to find one. And the death results element, just so you know, we did take a quick look before argument. There's a case called United States v. Parks, 700 F3rd, 775. It's a Sixth Circuit case from 2012. It didn't involve kidnapping where death results, but it involved bank robbery where death results. And since the death results element is really the only thing we care about, I think it's instructive. And in that case, what you had is a hardly fanciful hypothetical. It's a bank robbery. Somebody's in a car. And as they're driving away, there's a car accident. There's no mens rea element. It's a pure accident and death results. And that's the problem with the government's position on death results here is that there's no mens rea element. And under this court's decision in reis contraris, if you look at footnote 32, this court has said, hey, we have never applied, and I think under lea cali shouldn't apply, a use element like this to negligent, much less accidental. So for all those reasons, this really should be Judge Oldham hashed out in the district court because there's a lot of novel issues. That's a hard one. Thank you. You'll have some time, won't you, buddy? Appreciate it. Thank you. And who's up next, Mr. Bradshaw? Jonathan Bradshaw for the United States, Your Honor. Just making sure everyone can hear me okay. Thank you so much. I would like to spend the majority of my time discussing the first issue that we spent most of the time with Hall's counsel, and that is the question of whether Davis-Welch read together with Davis necessarily dictates that the rule of Davis is retroactive in the way that the Supreme Court has instructed that we read the text of 2255-H2. The text of 2255-H2 says we need a, this court must certify where there is a successive application that the successive motion, the proposed successive motion contains a new rule made retroactive by the Supreme Court that was previously unavailable. I left out of constitutional law. I apologize. A new rule of constitutional law. Now, every party concedes or acknowledges, it's not necessarily a concession, but an acknowledgement that the Supreme Court has not, in Davis itself, said that Davis applies retroactively. And there has been no parallel case, what Welch did for Johnson for Davis. And before the argument, I checked, there is no pending application or petition asking the Supreme Court to do that. I think in part, because the United States in every case, in every federal court across the together with Davis necessarily dictates retroactivity. Judge Oldham, if I could, I'd like to respond to a question that you asked Hall's counsel. And that was, what is the best sentence or a pair of sentences in Welch that mean that this type of rule, the type of rule at issue in Johnson and the type of rule at issue in Davis get us to necessarily dictate it? And I'm going to direct the court to the very last sentence on 1264 and the first sentence on 1265. So this is a quote from Shiro. A rule is substantive rather than procedural. If it alters the range of conduct or the class of persons that the law punishes. The next sentence, this includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the state's power to punish. That is exactly what Johnson did. And that is exactly what Davis does. And I ask you, though, about another portion of Welch that also quotes Shiro, which is that, and this is on 1264 earlier, that new substantive rules generally apply retroactively. Because what you just read is something, the conditions that would make a rule substantive. I'm asking now the question, OK, fine, let's say they're substantive. Is it retroactive? And all we know is that substantive rules are generally retroactive. The Supreme Court in, I think the best answer to your question is, in the government's view, substantive rules are retroactive, but set aside that major premise for a second. And let's just say if we're hung up on the word generally. So what do you do with the word generally? We know from Welch that rules that strike the reach of a federal criminal statute as void for vagueness apply retroactively. How do we know that? Because I actually like how Judge Oldham put it earlier. If the court had just said that in Welch or anywhere else, we wouldn't be here. I mean, he would agree that the syllogisms all follow. Sorry, that syllogistic reasoning would follow. And you'd have the multiple holdings analysis in Tyler. The problem here is, to me, I think you're predicting what the Supreme Court's going to do as opposed to actually seeing the Supreme Court say both that Davis is substantive and that it is a substantive rule that is retroactive. It seems to me that all you have here is logical analysis as opposed to actual holdings. I think the best way to think of it is, Welch talks about the type of rule that was issue in Johnson and the effect of that rule. And the effect of the rule in Johnson was it circumscribed the of the Armed Career Criminal Act. And in our view, Welch holds that when a new rule of constitutional law announced by the Supreme Court circumscribes the reach of a criminal statute, particularly where the statute is void for vagueness, that rule applies retroactively. So what do you think Justice Kavanaugh was thinking? That Welch is clearly a case that everybody had had in mind when people were talking about retroactivity. And just to be clear, in a space, why did Kavanaugh and three of his colleagues think that there's an open question here? You're referring to the point in the dissent where he raises the question, who knows whether Welch will pry retroactively? Exactly. And it follows, I think it's bookended by this whole analysis about how Johnson to Maya are about previous conduct, conducts preceding the crime at issue. Whereas Davis, according to Kavanaugh, anyway, very different. It's about the crime in question. I read that as more of a commentary on the rule that the Supreme Court has reached in Davis that Justice Kavanaugh disagrees strongly with and the government disagreed strongly with in that case. And I read that sentence in the context of the paragraph where he's saying, this is going to allow people whose convictions potentially are certainly on direct appeal, but potentially who are on collateral view to come bring these type of claims now. And I think had Justice Kavanaugh had this particular case before him, he might have cited it as an example that Mr. Hall was convicted in his sentence in 1997. His direct appeal over in 98, his collateral review is over in early 2000s. Here we are two decades later, and now he is raising a rule under Davis. And that's the way I read what Justice Kavanaugh wrote there. What do you make of his last paragraph of the whole opinion? Johnson and Demeyer are different or whether retroactivity? When you said, I don't see anything in the majority taking the position. I appreciate your distinction. It is about the substantive void for vagueness issue. But if they're different for one context, at least it's theoretically possible that it'd be different for the retroactivity context. I see. The way I read the language that you just quoted to me was a discussion that the holding of Davis should have come out differently. In other words, this statute is fundamentally different in the way that the government has argued to us that it is different. It is different because it is a present statute versus a sort of backward looking statute like the ACA. And therefore the majority should have reached the alternate conclusion. That's the way I read that paragraph. Okay. If I could briefly, if there are any other questions about 2255H2, I would love to speak to that. But if there are not, go ahead, Judge Holden. Can I ask just one, do you think that the government's concession on 2255H binds us? No. And why is that? In a couple of reasons. I don't think that the text of the statute in any way invites this court to decide what the government's position on these questions are. I think what binds this court is the text of the statute as interpreted in Tyler versus Kane. And then that's sort of my big picture answer. My on the ground answer, as the court is well aware, is in the lion's share of 2255H2 or 2244 application questions generally, state governments or the federal government aren't asked to weigh in. And so I don't think that in any way the government's concession binds this court. The government's arguing that point because we believe it's right under the law. But the short answer is no, I don't think it binds you. Let me ask it this way. Suppose this wasn't a 2244 second or successive question or 2255H second or successive question, maybe is the better way of saying it. Suppose instead this was like a 2250, just a COA question, right? And we issued a certificate of appealability that was wrong, right? Legally deficient. Say, for example, we failed to specify the debatable constitutional question in a COA and the government either affirmatively conceded that the COA was okay, notwithstanding the error, or it just didn't say anything, forfeited the issue, failed to object to a legally deficient COA. You would agree with us then that we would be bound by the government's concession in the sense that we couldn't do anything about the deficient COA, right? Under this court's case law, a defective COA is jurisdictional. And so... It used to be before Gonzalez versus Thaler. Okay. But the Supreme Court of the United States says the existence of the COA is jurisdictional, but the legal sufficiency of it is not. And so I guess what I'm wondering is if a 2244 authorization is kind of like a COA authorization, why wouldn't we be bound by your concession that we should issue the 2244 authorization? I don't think anything in the text of 2255 H2 binds this court as to the party's concession. It's the best answer I have for you. I'm sorry. If I may, let me just follow up on something you said a few minutes ago. I think you said that the government's position is your best reading of these opinions. And your best reading obviously is consistent with the circuits and different from the amici. I just want to clarify, so the government doesn't have any institutional opposition to the amici's position. You just don't think it's the best reading of the case law. Is that correct? What do you mean by institutional opposition? Besides this being, in the government's view, not the best reading, does the government have any other concerns with the amici's position? Is it purely an interpretive debate that you're having? I think that that's right. I think the short answer is no, although I haven't run that up the chain. So if I do and I come up with a different answer, I'll of course get back to you. But for the time being, no. Again, it's the reading of 2255H2 and the reading of Tyler versus Kane is how we're getting to this conclusion. I do would like to touch briefly on something Judge Oldham asked opposing counsel, which is what do we make of this interesting, largely irrelevant hypothetical that he has tossed out? And I think the distinction that opposing counsel drew was that somehow the rule of this court's en banc decision most recently in Reyes-Contreras requiring the movement to come forward with an actual example in a case instead of a legal hypothetical should somehow work differently for 924C and the ACCA. And the government sees absolutely no reason why that is the case and believes that this court's rule of Reyes-Contreras applies with full force in this context. And I see no reason to read that distinction into this court's case law. I'm happy to answer any other questions about kidnapping resulting in death or 2255H2. If there are none, I would also be happy to see the balance of my time back to the court. Can I ask one on the second issue, which is, you know, we have some of these cases, I guess they go back to Sparks, that say that the burden of getting a 2244 authorization is light or slight or not that significant. Are you aware of, in a broader context across the country, how we stack up with our sister circuits with respect to characterizing 2244 that way? Because it's certainly not the way I read the text of the statute that Congress passed. Correct. I think my understanding is the Third Circuit has an even lower threshold question than we do. I know there are some circuits, and I apologize, I don't have a case at the ready for you, but that simply do not even look to other procedural hurdles on the movements application. So in other words, I think the Fifth, maybe not unique, but as one of the whether a claim might be procedurally defaulted, for example. And so in other words, although I don't think your standard is particularly high, I don't think it's by any means, I think it is higher than some other courts. And just the question of where we get, I understand your point, Judge Oldham, that the interpretation of prima facie isn't spelled out in the statute, but obviously 2244 is just at least what gets us to the idea that the prima facie standard is what is controlling in these successive application questions. All right, Mr. Mitchell, thank you. Thank you. We'll hear from Mr. Mitchell. Thank you, Your Honors. May it please the court. Text of 2255 H2 is clear and unambiguous. Mr. Hall cannot obtain authorization to file a second or successive 2255 motion unless he can show the United States against Davis has been made retroactive to cases on collateral review by the Supreme Court. There is no decision of Supreme Court that has made Davis retroactive to cases on collateral review. So there is no way to escape this conclusion of this syllogism. Mr. Hall cannot obtain authorization to file a second or successive motion. The parties do not dispute the major premise or the minor premise of this syllogism. They agree that Davis itself did not resolve the question of retroactivity and they cannot identify any post-Davis decision that makes Davis retroactive. Instead, they attempt to escape the syllogism by relying on language in Tyler against Kane, as well as this court's prior decision in N. Ray Sparks. But neither of these precedents needs to be construed in a manner that flouts the unambiguous language of 2255 H2. And if it is even possible to interpret those decisions narrowly to avoid a ruling from this court that contradicts the text of a congressional enactment, then this court is constitutionally obligated to adopt a narrowing construction of those decisions. Well, perhaps I misunderstood counsel, but I thought he was embracing your syllogistic framework and simply saying that they can meet that framework under the theory that this is a Welch case and it is both substantive and retroactive. That's how I understand their argument as well, Judge Held, but this goes to how Tyler against Kane should be interpreted. This language in Tyler against Kane that acknowledges the possibility that more than one decision can make a new rule of constitutional law retroactive to cases on collateral review. Opposing counsel is embracing an understanding of Tyler against Kane that would allow in a federal appellate court to conclude that Davis has been made retroactive past tense, even though there is no decision of the Supreme Court that says the ruling Davis has been made retroactive. Opposing counsel is basing his claim that the retroactivity of Davis is indistinguishable from the retroactivity of Welch, but that approach violates the unambiguous language of 2255H2, and the passage in Tyler against Kane does not need to be read in the way that Mr. Hockman is suggesting, and that's all we need to show as amicus for a denial of the motion, because to the extent Tyler against Kane could be to allow a court to authorize a second or successive motion absent a past ruling from the Supreme Court that makes Davis retroactive, it's violating the text of a congressional enactment which qualifies as the supreme law of the land under article six, and the same is true of Ingray Sparks, which we acknowledge in our brief was wrong to authorize a second or successive motion before the Supreme Court of the United States had issued a ruling that made Graham retroactive in the case of collateral review. Sparks went ahead and authorized the second or successive proceeding regardless, because in the view of the Sparks panel, it was inevitable that the Supreme Court would make Graham retroactive whenever it got around to deciding the question. That's a violation of the statutory language, which looks exclusively to the past. The word made, the verb made uses the past tense, and absent a past decision of the Supreme Court, not a predicted future decision of the Supreme Court, a past decision of the Supreme Court that makes the new world retroactive, absent such a decision, no federal judicial panel can authorize a second round of post conviction proceedings. So what do you make of their argument, though, Mr. Hall's argument that Welch is that past decision that Welch isn't just about Johnson, it's about essentially all void for vagueness cases, because void for vagueness cases necessarily changed the scope of substantive statutory liability. I think two points in response to that, Judge Ho. First, Welch can't possibly make Davis retroactive because Davis wasn't decided at the time of Welch. Well, I thought you were making acknowledged you can, the order doesn't matter. It's just as long as you have the two principles stated. Well, the second principle has to be a statement from the Supreme Court that Davis is either a substantive rule, or that Davis is some type of rule, or falls into some type of category that a past decision of the Supreme Court makes categorically retroactive. We acknowledge that we think Tyler against Kane has to be read that way. But what we don't have, and I think Judge Ho, you mentioned this in your questioning of Mr. Hockman, what we don't have from the Supreme Court is a ruling that says Davis is a substantive rule. We don't have a ruling from the Supreme Court that says Davis falls within the first teak exception. We have no past ruling of the Supreme Court that weighs in on any of that. So as Tyler acknowledges, it's possible for two decisions in the Supreme Court in combination to make a new rule retroactive. The first decision can say all substantive rules are retroactive. The second decision can say Davis is a substantive rule. So what they say, I think is, and I'm sure Mr. Hockman will correct me if I'm wrong, I think their argument is, just read Welch. Welch says that Johnson has to be substantive and has to be retroactive, as it is changing substantive liability rules and liability consequences, right? And that's exactly what Davis is doing as well. What's yours? But that doesn't satisfy the requirement of the statute, because we do not have a ruling from the Supreme Court of the United States that has made, past tense, made Davis retroactive. We have a ruling from the Supreme Court that has made Johnson retroactive. We do not have a ruling from the Supreme Court that has made Davis retroactive. But hasn't it, couldn't the argument be that Welch is making not just Johnson retroactive, but all cases that are like Johnson? Welch can make... Is this an issue of how broad the category is? Yes. Judge Ho, I would agree with this much. Welch has made all cases that are like Johnson and that predate the issuance of Welch. It has made those cases retroactive. It has not made future cases that had not been decided by the Supreme Court at the time of Welch retroactive. Where do you see that in Welch? Or where do you get that Welch itself can only apply to previous rulings? I don't get that from Welch. I get that from the fact that the Supreme Court is not bound to follow its previous holdings. Stereo Decisis does not bind the Supreme Court. The Supreme Court could decide tomorrow that it's going to overrule all of the Teague exceptions and nothing will be retroactive anymore. Every single term the Supreme Court overrules precedent. Every single term the Supreme Court distinguishes precedent in a manner that nobody thought was distinguishable. The Supreme Court can't bind itself. It's logically impossible to say that a past ruling of the Supreme Court dictates the outcome of a future ruling of the Supreme Court. We've seen this time and time again. Bowers against Hardwick dictated the outcome in Lawrence against Texas, except for the fact that the Lawrence court decided to overrule Bowers. The same thing can happen here. If Mr. Hoffman's claim is that Welch... But under that view, then why would you ever have a multiple holdings? I wonder if your logic, which I understand, just contradicts the Tyler Dicta. No, I don't think it contradicts the Tyler Dicta at all, because you can still have two past decisions of the Supreme Court that in combination make a decision retroactive. I gave an example. If there had been a decision of the Supreme Court that had simply said that Davis is substantive without saying anything about retroactivity, but if it says Davis is a substantive rule, and then you combine that holding with another past holding of the Supreme Court that says all substantive rules are retroactive, that would fall within this description that is discussed in that. You're just disagreeing on whether Welch says that all substantive rules are retroactive. Well, it hedges with the word generally, as Your Honor has pointed out. That's one problem. But the second problem and the more important problem is even if Welch were indistinguishable from the holding of Davis with respect to retroactivity, the Supreme Court isn't required to follow Welch when it gets around to deciding the question. We know the Supreme Court... Your point is Davis itself doesn't say that the rule in Davis is substantive. It doesn't say that? All we know those justices in Davis are getting ready to overrule Welch. They just haven't told us yet. Is that sort of your idea? We don't know. We have no idea. We don't know who's even going to be sitting on the Supreme Court when the retroactivity question gets there. But more importantly, the statute is phrased in the past tense. A court cannot look to the future in making the Supreme Court of the United States that has made Davis retroactive. Mr. Mitchell, why are we not bound by the government's concession? Several reasons, Judge Oldham, if I may. I see my time's about to expire. May I answer the question? You're not bound by the government's concession because the statutory enactment in 2255-2 is the specifically limits the power and the jurisdiction of the federal judiciary. This court cannot act in the manner that authorizes a judicial proceeding that is illegal under congressional legislation for the same reason that this court cannot assert subject matter jurisdiction over a case that falls outside Section 1331 or 1332, even if the parties stipulate that it's within the court's jurisdiction. Judge Oldham, you did ask Mr. Mitchell about a defective certificate of appealability. If I could briefly comment on that with the court's permission. You're right, Judge Oldham, to point out that a defective certificate of appealability is not a jurisdictional problem going forward in the collateral proceeding. But in our view, with respect, that's not the right analogy. Mr. Mitchell, my time's expired. Thank you, Your Honors. Thank you, Your Honors. I'll try to be brief here on rebuttal. First, focusing initially, Judge Oldham, let me begin with your question about the government's concession. I think, obviously, this comes down to whether 2255H2 is jurisdictional. And unless it's jurisdictional, and I do not see jurisdiction imbibing language in the statute, unless it's jurisdictional, then I think it's certainly within the range of plausible interpretations of this court to say that the concession is binding on the court. We haven't looked into that position, and obviously, we haven't briefed that. We'd be happy to if the court wants to have the parties brief that issue further. We can certainly look into it, and welcome to do so. We leave that to you in your discretion. But what I heard Mr. Mitchell say in response to that is, essentially, he thinks it's jurisdictional, but he didn't explain why. And I don't think there is any particular reason to conclude that it is jurisdictional. Turning back to— In fairness, I think it's because he ran out of time. Fair enough. Fair enough, Judge Ho. Turning back to the core issue that we've been discussing today, I think Mr. Mitchell's position was rather revealing. He told you you need to overrule Sparks, and he told you that the Supreme Court needs to overrule Welch, needs to walk away from Welch. And that's just not has-made. That's the future. In fairness, I think what he's saying is that you can't logically extend previous precedents because the Supreme Court could always overturn its precedent. But I think he's acknowledging that if you had two precedents from the past that work together, then as a lower court, we have to assume that that is enough and that the H standard is satisfied. I think his point, though, is you don't have those two cases yet. I think, at the end of the day, your disagreement is about the actual case. It's not about the case. It's about the case. I think that's what he said. I don't know. I don't know. He did say more than once that the Supreme Court might overrule Welch. And I just want to be clear that that is no basis at all for this court denying the application here, because that's a future-oriented. He said that, and then almost in the next sentence, he emphasized the past tense of the statute, which is correct. So he said, on the one hand, you can anticipate, maybe, we don't know, the Supreme Court will overrule Welch. But on the other hand, you're only allowed to look in the past. You're only allowed to look at where things stand right now. Those two positions don't work together. And in fact, it's quite clear that I do not think you're entitled to consider overruling Welch. Now, Judge Ho, you had an exchange, I believe it was with Mr. Bradshaw, about how substantive rules are generally retroactive and generally retroactive is giving you trouble. And I want to address that, because this case, that Welch in particular is much more specific than simply relying on the notion that substantive rules are, quote, generally retroactive. At 1265 of Welch, this is what they say. The rule announced in Johnston is substantive. That's true. It does say that. Well, here's what it says. It says, by striking down the residual clause as void for vagueness, Johnston changed the substantive reach of the armed career criminal act, altering the range of conduct for the class of persons the act punishes. And that is it. That is what does it. It follows that Johnston is a substantive decision. So it's much more specific. It's a certain kind of substantive decision, one that of a criminal statute. That's the category. And that is a perfect description of what Davis did for 924. Believe me, I get the point. The language in Welch is quite clear. At the end of the day, though, you're running into the three judges in Piscota and the four justices in Davis, all of whom seem to think that it's either not retroactive or at least that there's an interesting question about retroactivity. Well, again, all I can submit to you is our colleagues. Anyway, understood, understood. But all I can submit to you is that the language in Welch, combined with the ruling in Davis, is what necessarily dictates was designed to capture. And that is the uniform view of every other court of appeals to have considered it. It works. Nobody has pointed to any language in Welch that leaves room for Justice Kavanaugh's speculation about some distinction between present conduct and past conduct. What I just read doesn't give a hoot about present conduct or past conduct. It's whether the range of conduct, present or past, is narrowed or broadened. You'll acknowledge you can have an opinion that lists a couple of reasons and simply doesn't address another criterion because it's not presented, namely the past versus present conduct. That's the whole point of these cases developing, right? You'll have a new case. It may or may not introduce a new principle. I am not going to stand in front of three distinguished appellate judges and tell them that there is no way to distinguish cases. I mean, I understand that. I'm not that silly. But I don't think this language is that sort of thing. That's all. Thank you. Understood. Thank you, sir. Thank you, gentlemen. We've got your argument.